Sarah E. Piepmeier, Bar No. 227094
SPiepmeier@perkinscoie.com
Nathan B. Sabri, Bar No. 252216
NSabri@perkinscoie.com
PERKINS COIE LLP
505 Howard Street, Suite 1000
San Francisco, California 94105-3204
Telephone: +1.415.344.7000
Facsimile:  +1.415.344.7050

William C. Rava
(*Pro Hac Vice* to be filed)
WRava@perkinscoie.com
Caleb Bacos
(*Pro Hac Vice* to be filed)
CBacos@perkinscoie.com
Samantha Carl
(*Pro Hac Vice* to be filed)
SCarl@perkinscoie.com
PERKINS COIE LLP
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Pacific Market International, LLC, and PMI WW Brands, LLC,<br><br>        Plaintiffs,<br><br>    v.<br><br>Five Below, Inc.,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Pacific Market International, LLC and PMI WW Brands, LLC (collectively, "Plaintiffs") hereby allege for their Complaint against Defendant Five Below, Inc. ("Five Below" or "Defendant") as follows:

COMPLAINT

**INTRODUCTION**

1.    Plaintiffs bring this action to halt Five Below's ongoing and willful campaign of intellectual property theft and unfair business practices. As alleged herein, Five Below is a serial infringer who offers low-quality "dupes" of successful and distinctive third-party products. Here, Five Below's parasitic copying trades on Plaintiffs' hard-earned goodwill, confuses consumers, and causes irreparable harm to the reputation and distinctiveness of Plaintiffs' iconic Stanley 1913 products, including the well-known and recognizable QUENCHER and ICEFLOW products.

2.    Five Below's conduct is neither accidental nor isolated. On information and belief, at least as early as 2024, Five Below began selling a suite of tumblers—including the Hyperquench, Hydraquench, HydraSip, and Hydrachug—that mimic the protected design elements of Plaintiffs' QUENCHER and ICEFLOW products down to their individual aesthetic features. These knockoffs are substantially the same as the ornamental designs claimed in Plaintiffs' registered design patents and are confusingly similar to Plaintiffs' protected trade dress. Five Below compounds the confusion by adopting names that leverage the dominant QUENCH element of Plaintiffs' federally registered QUENCHER mark to falsely suggest an affiliation.

3.    Five Below's infringement is also willful. After receiving a detailed demand letter identifying Plaintiffs' patents, trademarks, and trade dress, Five Below refused to stop its infringement and instead expanded the line of knockoff products, all while aggressively marketing the dupes. Through these actions, Five Below intentionally seeks to divert sales, confuse customers, undermine Plaintiffs' brands, and exploit the extraordinary consumer goodwill that Plaintiffs have worked tirelessly to develop.

4.    To remedy Five Below's wrongful conduct, Plaintiffs now bring claims for design patent infringement, trade dress and trademark infringement, false designation of origin, unfair competition, unfair business practices, and unjust enrichment.

//

//

//

//

COMPLAINT

**THE PARTIES**

5.      Plaintiff Pacific Market International, LLC ("PMI") is a limited liability company formed under the laws of Washington with a principal place of business in Seattle, Washington.

6.      Plaintiff PMI WW Brands, LLC ("PMI WW Brands") is a limited liability company formed under the laws of Delaware with a principal place of business in Seattle, Washington. PMI WW Brands uses the intellectual property rights at issue in this Complaint with permission of PMI.

7.      Defendant Five Below, Inc. ("Five Below") is a corporation formed under the laws of Pennsylvania with a principal place of business in Philadelphia, Pennsylvania.

**JURISDICTION AND VENUE**

8.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1338(a), and 15 U.S.C. § 1121, as this action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. § 271, and the Lanham Act, 15 U.S.C. § 1051 *et seq.* This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9.      This Court also independently has subject matter jurisdiction under 28 U.S.C. § 1332 because complete diversity exists between the parties. PMI is incorporated in Washington and PMI WW Brands is incorporated in Delaware. Both maintain their principal places of business in Washington and have substantial business operations in this District. Defendant is a citizen of the State of Pennsylvania (where it is incorporated and maintains its principal place of business). The amount in controversy for Plaintiffs' claims exceeds $75,000, exclusive of interest and costs.

10.      This Court has personal jurisdiction over Defendant because Defendant conducts business in this District, including by operating storefronts and online retail operations that offer the products at issue, and has otherwise made or established contacts within the State of California sufficient to permit the exercise of personal jurisdiction.

11.      The United States District Court for the Northern District of California is a proper venue pursuant to at least 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1400(b) because Defendant has

COMPLAINT

regular and established places of business in this District, and because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this District.

### FACTS

**Plaintiffs' Business and Renowned Products**

12.     PMI WW Brands designs, manufactures, markets, and sells industry-leading drinkware, foodware, and mobility and storage products that have long enjoyed a reputation for excellence and durability, including under the iconic Stanley 1913 brand.

13.     Plaintiffs' long history dates to 1913 when founder William Stanley, Jr., seeking to create a product that would keep his coffee warm throughout the day, invented the first all-steel vacuum bottle.

14.     In the century since, Plaintiffs expanded their business to encompass a wide range of products—including but not limited to bottles, thermoses, tumblers, coolers, carriers, cups, and accessories—that have evolved to meet consumers' needs.

15.     Today, Plaintiffs' products are designed for use both inside and outside the home and are constructed with the utmost attention to sustainability and waste reduction.

16.     Plaintiffs' products are sold online and in retail outlets throughout the United States and around the world.

17.     Plaintiffs' QUENCHER and ICEFLOW tumblers, offered in a variety of sizes and colors, are among their most popular products, and both are widely recognized by consumers.

18.     Plaintiffs' products have been featured in collaborations with third-party brands, athletes, and celebrities, including Barbie®, LoveShackFancy®, Post Malone, Lainey Wilson, Lionel Messi, Caitlin Clark, and Olivia Rodrigo.

19.     Plaintiffs have received significant media attention for their innovative products and designs, including by the New York Times, The Wall Street Journal, Vogue, WWD, and other national outlets. Time recognized Plaintiffs as one of the Time100 Most Influential Companies in 2024.

20.    A version of Plaintiffs' QUENCHER tumbler is the best seller in Amazon's "Tumblers & Water Glasses" category, and Plaintiffs' products also account for four of the top ten slots.

21.    Representations of the QUENCHER and ICEFLOW tumblers are pictured below:

**QUENCHER Tumbler**                    **ICEFLOW Tumbler**





22.    PMI owns multiple patents and trademarks in connection with its well-known QUENCHER and ICEFLOW products.

**Plaintiffs' Design Patent Rights**

23.    PMI has protected its innovative designs through many design patents issued by the United States Patent and Trademark Office, including U.S. Patent Nos. D805,838 ("the D'838 Patent") and D955,173 ("the D'173 Patent") (collectively, "the Asserted Patents"). PMI owns all

right, title, and interest in and to the Asserted Patents. An exemplary figure from each patent is below.

| D'838 Patent | D'173 Patent |
|---|---|



FIG. 1    FIG. 9

**Plaintiffs' Trade Dress and Trademark Rights**

24.    PMI also owns the trade dress reflected in the QUENCHER and ICEFLOW tumblers, as well as the marks the products are offered under.

25.    In particular, the trade dress for the QUENCHER covers the product's unique and distinctive design elements, including, but not limited to, its squared-off handle, the metal band between its cup and lid, and the separate strip at the top of its lid (the "Quencher Trade Dress").

26.    The Quencher Trade Dress is nonfunctional.

COMPLAINT

27.    The specific combination, placement, and appearance of the features of the Quencher Trade Dress are not essential to the use or purpose of the products. Equally functional alternative designs are available to competitors.

28.    Similarly, the trade dress for the ICEFLOW tumbler covers the product's own unique and distinctive design elements, including, but not limited to, its five-sided hexagonal handle, the metal band between its cup and lid, and its distinctive flip-straw feature (the "IceFlow Trade Dress" and, together with the Quencher Trade Dress, the "Trade Dress").

29.    The IceFlow Trade Dress is nonfunctional.

30.    The specific combination, placement, and appearance of the features of the IceFlow Trade Dress are not essential to the use or purpose of the products, and equally functional alternative designs are available to competitors.

31.    The inspiration behind the design of the Trade Dress is, in part, a nod to the Classic Legendary thermos designed by William Stanley, Jr., which when turned upside down is seen in the body design of the Trade Dress.



32.    The Trade Dress has acquired secondary meaning. As a result of Plaintiffs' extensive marketing, advertising, and commercial success, consumers have come to associate the Trade Dress with Plaintiffs as the source of the respective products. The Trade Dress is widely recognized by the public as identifying Plaintiffs' products.

COMPLAINT

33.     Plaintiffs have made substantial investments each year in advertising and promoting the QUENCHER and ICEFLOW products and the associated Trade Dress.

34.     The Plaintiffs' Stanley 1913 Instagram page has 1.6 million followers and posts on the page frequently feature the Trade Dress. Corresponding pages on Facebook and X (formerly Twitter) also highlight the Trade Dress to nearly 500,000 collective followers.

35.     PMI owns all rights, title, and interest in U.S. Trademark Registration No. 7,405,350 for QUENCHER in Class 21 (the "QUENCHER Mark") and for 6,397,961 for ICEFLOW in Class 21 (the "ICEFLOW Mark") (collectively, the "Marks").

36.     The Marks are valid and subsisting on the Principal Register.

37.     Plaintiffs offer the QUENCHER tumblers under the QUENCHER Mark, and the ICEFLOW tumblers under the ICEFLOW Mark.

38.     Plaintiffs have invested significant resources in the design, development, marketing, promotion, and protection of their QUENCHER and ICEFLOW tumblers.

39.     The QUENCHER and ICEFLOW tumblers have achieved considerable market success and recognition due to their popularity among a wide range of consumers.

40.     As a result of Plaintiffs' efforts, including extensive marketing and enormous commercial success, the Marks and the distinctive appearance of the Trade Dress have come to signify Plaintiffs as the sole source of the QUENCHER and ICEFLOW tumblers.

41.     The QUENCHER and ICEFLOW tumblers are sold nationwide, including in California and this District.

42.     The products are sold through a variety of channels, including direct-to-consumer, at the Stanley 1913 web site, authorized retailers, and online platforms.

43.     Plaintiffs have developed substantial goodwill in their trademarks, trade dress, and product designs.

44.     Plaintiffs' intellectual property is a valuable asset and a key driver of their business.

**Five Below's Willful and Infringing Conduct**

45.     Defendant Five Below is a discount retailer with locations in California and around the United States.

COMPLAINT

46.    Five Below's business is based, in part, on the sale of knockoffs, or "dupes," of popular third-party products.

47.    Five Below has been frequently accused of violating the patents, trade dress, trademarks, and other intellectual property of third-party businesses, including in multiple cases brought before federal courts.

48.    On information and belief, in or about early 2024, Five Below began offering Hyperquench,  Hydraquench, HydraSip, and Hydrachug tumblers (the "Accused Products") in its stores, including in California, and on its website. Five Below uses a picture of the Hydraquench tumbler to identify the "Tumblers & Sippers" category on its website (as seen below), and otherwise prominently features Accused Products in its marketing efforts.



49.    The Accused Products are virtually identical in overall design to Plaintiffs' QUENCHER and ICEFLOW tumblers, including the distinctive combination and arrangement of the handle, band, and/or lid features that comprise the Trade Dress. A comparison of the QUENCHER and ICEFLOW tumblers and the Accused Products can be seen below:

//

//

//

//

//

COMPLAINT

**PMI's QUENCHER Tumblers**   **Five Below's Hydraquench Tumblers**



//
//
//
//
//
//

COMPLAINT

**PMI's ICEFLOW Tumbler**                    **Five Below's HydraSip Tumbler**



50.     The designs of Five Below's Hydraquench products are substantially the same as the design claimed in the D'838 Patent. Side-by-side comparisons of an exemplary Hydraquench tumbler from Five Below to the D'838 Patent reveal Five Below's misappropriation of PMI's patented design.

//
//
//
//
//
//
//
//
//
//

COMPLAINT

| PMI's D'838 Patent | Exemplary Hydraquench Product |
|---|---|
| FIG. 1 | |

//
//
//
//
//
//
//

| PMI's D'838 Patent | Exemplary Hydraquench Product |
|---|---|
|  FIG. 4 |  |
|  FIG. 7 |  |

51.     The designs of Five Below's HydraSip products are substantially the same as the design claimed in the D'173 Patent. Side-by-side comparisons of an exemplary HydraSip product from Five Below to the D'173 Patent, in particular its second embodiment, reveal Five Below's misappropriation of PMI's patented design.

COMPLAINT

| PMI's D'173 Patent | Exemplary HydraSip Product |
|---|---|
|  FIG. 9 |  |
|  FIG. 11 |  |

COMPLAINT

| PMI's D'173 Patent | Exemplary HydraSip Product |
|---|---|
|   FIG. 13 |  |
|   FIG. 15 |  |

52.     The design of the Accused Products is substantially the same as the ornamental designs claimed in the Asserted Patents.

COMPLAINT

53.     The Accused Products include a squared-off or hexagonal handle, a metal band between cup and lid, and a distinctive rotating or flip-straw lid feature, mimicking key elements of the Trade Dress.

54.     The overall look and feel of the Accused Products is confusingly similar to the Trade Dress, such that ordinary consumers are likely to believe that the Accused Products are associated with, sponsored by, or approved by Plaintiffs.

55.     Five Below's use of the Hyperquench and Hydraquench marks is also likely to confuse consumers.

56.     The QUENCHER Mark is well-known and widely recognized by consumers in connection with the QUENCHER product.

57.     The Hyperquench and Hydraquench marks incorporate QUENCH, the dominant element of the QUENCHER Mark.

58.     The use of "Hyperquench"" and "Hydraquench creates a confusingly similar commercial impression to the QUENCHER Mark.

59.     Five Below's use of the Hyperquench and Hydraquench marks is likely to cause confusion, mistake, or deception among consumers as to the source, sponsorship, or affiliation of the corresponding product with Plaintiffs.

60.     Five Below's Accused Products are sold in the same channels of trade as Plaintiffs' products.

61.     The Accused Products are marketed to the same classes of consumers as Plaintiffs' products.

62.     Five Below's conduct is willful, intentional, and in reckless disregard of Plaintiffs' rights.

63.     Despite receiving a letter from PMI in October 2024, which outlined their patent and trademark rights and demanded that Five Below cease its unlawful activities, Five Below refused to comply, denied liability, and continued to sell the Accused Products after acknowledging receipt of Plaintiffs' letter.

COMPLAINT

64.     On information and belief, Five Below even expanded its line of infringing products after acknowledging receipt of PMI's letter. For example, Five Below began selling a new Hydrachug product and a 20 oz. Hyperquench product—incorporating distinctive design elements and color schemes matching ICEFLOW products and 20 oz. QUENCHER products sold by Plaintiffs—after receiving Plaintiffs' letter.

65.     Five Below's efforts to imitate Plaintiffs' ICEFLOW products compounds the likelihood of confusion caused by its imitation of Plaintiffs' QUENCHER and ICEFLOW tumblers, as well as the harm caused by Five Below's infringement of the Trade Dress and QUENCHER Mark generally.

66.     Five Below's parasitic and intentional copying of Plaintiffs' Trade Dress is further evidenced by the following examples of infringing products, which are some of many that outright mimic Plaintiffs' products down to the selection of colors, gradients, and finishes:

| Plaintiffs' Official Products | Five Below's Dupe Products |
|:---:|:---:|




COMPLAINT

**Plaintiffs' Official Products**          **Five Below's Dupe Products**



COMPLAINT

67.    The copying is so obvious and apparent that multiple third parties have reported on the clear similarities between the Trade Dress and the Accused Products, including Business Insider, Parade, and The Kitchn.

# Parade

Five Below Is Selling Cute and Colorful Tumblers for $5, and They Look Just Like Mini Versions of Stanley Cups

**Five Below's $7 Pretty Pink Water Bottle Looks Strikingly Similar to the Stanley Iceflow**

Can you see the resemblance?

**Five Below's $5 Stanley Cup Dupe Is Flying Off Shelves**

thekitchn.com/five-below-stanley-tumbler-dupe-23536107

68.    Five Below encourages others to violate the Plaintiffs' Trade Dress through an affiliate marketing program that pays third parties to promote the Accused Products.

69.    Five Below's infringing acts have caused and, unless restrained, will continue to cause irreparable harm to Plaintiffs, their reputation, and the goodwill embodied in the Trade Dress and the QUENCHER Mark. Among other things, Five Below's conduct has led to lost sales, actual or likely consumer confusion, harm to Plaintiffs' relationships with customers and business partners, damage to Plaintiffs' reputation, and costs and expenses incurred by Plaintiffs in investigating and addressing the infringement.

70.    As a result, Plaintiffs have suffered and will continue to suffer damages in an amount to be determined at trial and irreparable harm for which there is no adequate remedy at law.

71.    Plaintiffs are entitled to injunctive relief to prevent further harm, to recover damages, including statutory and/or enhanced damages, as well as attorneys' fees and costs, pre- and post-judgment interest, and such other relief as the Court deems just and proper.

## CLAIMS FOR RELIEF

## Count I

### Patent Infringement of the D'838 Patent in Violation of 35 U.S.C. § 271

72.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 71 as if fully set forth herein.

COMPLAINT

73.    PMI is the owner of all right, title, and interest in and to the D'838 Patent, issued on December 26, 2017, entitled "Beverage Container."  The D'838 Patent claims the ornamental design for a tumbler lid as shown and described in the patent. The D'838 Patent is attached as Exhibit 1.

74.    Five Below has infringed and continues to infringe the D'838 Patent by making, using, selling and/or offering to sell in the United States, and/or importing into the United States, the Hydraquench products discussed in the Complaint, which embody the design covered by the D'838 Patent.  Five Below's infringing activities violate 35 U.S.C. § 271.

75.    Five Below's infringement is without the consent or other authority of Plaintiffs. Five Below is not licensed under the D'838 Patent.

76.    Plaintiffs have been damaged by Five Below's act in an amount as yet unknown. Plaintiffs have no adequate legal remedy. Unless enjoined by this Court, Five Below's continued acts of infringement will cause Plaintiffs substantial and irreparable harm. Under 35 U.S.C. § 283, Plaintiffs are entitled to an injunction barring Five Below from further infringement of the D'838 Patent.

77.    Five Below's infringement is willful and deliberate, as Five Below had knowledge of PMI's D'838 patent at least as of October 31, 2024, when Plaintiffs sent their demand letter to Five Below, yet continued to sell products utilizing the infringing design despite the clear similarity and high likelihood that its actions constitute infringement.  Plaintiffs are therefore entitled to increased damages pursuant to 35 U.S.C. § 284. Plaintiffs are also entitled to attorneys' fees and costs in prosecuting this action pursuant to 35 U.S.C. § 285, as this is an exceptional case.

## Count II

### Patent Infringement of the D'173 Patent in Violation of 35 U.S.C. § 271

78.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 77 as if fully set forth herein.

79.    PMI is the owner of all right, title, and interest in and to the D'173 Patent, issued on June 21, 2022, entitled "Beverage Container."  The D'173 Patent claims the ornamental design for

a beverage container as shown and described in the patent. The D'173 Patent is attached as Exhibit 2.

80.     Five Below has infringed and continues to infringe the D'173 Patent by making, using, selling and/or offering to sell in the United States, and/or importing into the United States, the HydraSip products discussed in this Complaint, which embody the design covered by the D'173 Patent.  Five Below's infringing acts violate 35 U.S.C. § 271.

81.     Five Below's infringement is without the consent or other authority of Plaintiffs. Five Below is not licensed under the D'173 Patent.

82.     Plaintiffs have been damaged by Five Below's acts in an amount as yet unknown. Plaintiffs have no adequate legal remedy. Unless enjoined by this Court, Five Below's continued acts of infringement will cause Plaintiffs substantial and irreparable harm. Under 35 U.S.C. § 283, Plaintiffs are entitled to an injunction barring Five Below from further infringement of the D'173 Patent.

83.     Five Below's infringement is willful and deliberate, as Five Below had knowledge of PMI's D'173 patent at least since October 31, 2024, when PMI sent its demand letter to Five Below, yet continued to sell products utilizing the infringing design despite the clear similarity and high likelihood that its actions constitute infringement. Plaintiffs are therefore entitled to increased damages pursuant to 35 U.S.C. § 284. Plaintiffs are also entitled to attorneys' fees and costs in prosecuting this action pursuant to 35 U.S.C. § 285, as this is an exceptional case.

## <u>Count III</u>

### **Trade Dress Infringement in Violation of Violation of 15 U.S.C. § 1114**

84.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 83 as if fully set forth herein.

85.     Plaintiffs' QUENCHER and ICEFLOW tumblers have distinctive trade dress that serves to identify Plaintiffs as the source of these products.

86.     The Trade Dress is non-functional and has acquired secondary meaning through Plaintiffs' extensive marketing, promotion, and sales of their products.

COMPLAINT

87.     Plaintiffs have spent significant resources marketing and promoting the QUENCHER and ICEFLOW tumblers, which have each achieved considerable market success and recognition due to their popularity among a wide range of consumers.

88.     As a result of Plaintiffs' marketing efforts and the products' commercial success, the Trade Dress is widely recognized as a source identifier of the QUENCHER and ICEFLOW tumblers.

89.     Five Below has used and continues to use trade dress that is confusingly similar to the Trade Dress in connection with the offering for sale, sale, marketing, advertising, and promotion of its Hyperquench, Hydraquench, HydraSip, and Hydrachug tumblers.

90.     Five Below's Hyperquench, Hydraquench, HydraSip, and Hydrachug tumblers mimic the distinctive trade dress of PMI's QUENCHER and ICEFLOW tumblers, respectively.

91.     Five Below's use of trade dress that is confusingly similar to the Trade Dress is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Five Below with Plaintiffs, or as to the origin, sponsorship, or approval of Five Below's products by Plaintiffs.

92.     Five Below's actions constitute trade dress infringement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125.

93.     Five Below's infringement has been willful and deliberate, as Five Below had knowledge of Plaintiffs' products and trade dress rights, yet continued to sell and even introduced new products bearing the infringing trade dress.

94.     As a direct and proximate result of Five Below's trade dress infringement, Plaintiffs have suffered and will continue to suffer damages, including lost sales, damage to their reputation and goodwill, and dilution of their distinctive Trade Dress.

95.     Plaintiffs have no adequate remedy at law and will continue to suffer irreparable harm unless Five Below is enjoined from further infringement of the Trade Dress.

//

//

//

COMPLAINT

## <u>Count IV</u>

### **Trademark Infringement in Violation of 15 U.S.C. § 1114**

96.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 95 as if fully set forth herein.

97.     PMI owns valid and protectable registered trademarks, including the QUENCHER Mark (U.S. Registration No. 7405350).

98.     Plaintiffs have continuously used the QUENCHER Mark in commerce in connection with their tumbler products.

99.     Five Below was aware of Plaintiffs' rights in the QUENCHER Mark when it selected the "Hydraquench" mark, and did so with the intent to confuse consumers.

100.    Five Below has used and continues to use the confusingly similar "Hyperquench"" and "Hydraquench" marks in commerce in connection with the sale, offering for sale, distribution, and advertising of its tumbler products without Plaintiffs' consent or authorization.

101.    Five Below's use of "Hyperquench"" and "Hydraquench" is likely to cause confusion, mistake, or deception as to the source, origin, sponsorship, or approval of Five Below's products.

102.    The "Hyperquench"" and "Hydraquench" marks are similar to PMI's QUENCHER Mark in appearance, sound, and commercial impression.

103.    Five Below's tumbler products are identical or highly similar to PMI's tumbler products.

104.    Five Below and Plaintiffs sell their products through similar channels of trade and to similar classes of consumers.

105.    Five Below's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

106.    Five Below's infringement has been willful and deliberate, as Five Below had knowledge of PMI's trademark rights at least as of October 31, 2024, when Plaintiffs sent their demand letter to Five Below, yet continued to sell products bearing the infringing mark.

COMPLAINT

107.    Five Below's conduct is causing immediate and irreparable harm and injury to Plaintiffs, and to their goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

108.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Five Below's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## **Count V**

**False Designation of Origin and Unfair Competition in Violation of 15 U.S.C. § 1125**

109.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 108 as if fully set forth herein.

110.    Plaintiffs' QUENCHER and ICEFLOW tumblers have distinctive trade dress that serves to identify Plaintiffs as the source of these products.

111.    The trade dress of Plaintiffs' QUENCHER tumbler includes a squared-off handle, a metal band between the cup and lid, and a separate strip at the top of the lid.

112.    The trade dress of Plaintiffs' ICEFLOW tumbler includes a five-sided hexagonal handle, a metal band between the cup and lid, and a flip-straw feature.

113.    Plaintiffs' trade dress is non-functional and has acquired secondary meaning through Plaintiffs' extensive marketing, promotion, and sales of their products.

114.    Five Below has used and continues to use false designations of origin, false descriptions, and false representations in connection with the offering for sale, sale, marketing, advertising, and promotion of its Hyperquench, Hydraquench, HydraSip, and Hydrachug tumblers.

115.    Five Below was aware of Plaintiffs' trade dress and adopted its nearly identical design with the intent to confuse and deceive consumers.

116.    Five Below's Hyperquench, Hydraquench, HydraSip, and Hydrachug tumblers mimic the distinctive trade dress of Plaintiffs' QUENCHER and ICEFLOW tumblers, respectively.

117.    Five Below's use of trade dress that is confusingly similar to the Trade Dress is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of

COMPLAINT

Five Below with Plaintiffs, or as to the origin, sponsorship, or approval of Five Below's products by Plaintiffs.

118.    Five Below's actions constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125.

119.    Five Below's infringement has been willful and deliberate, as Five Below had knowledge of Plaintiffs' trade dress rights at least as of October 31, 2024, when Plaintiffs sent their demand letter to Five Below, yet continued to sell products bearing the infringing trade dress.

120.    Five Below's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to its goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no adequate remedy at law.

121.    Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Five Below's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## Count VI

### Unfair Competition Under California Common Law

122.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 121 as if fully set forth herein.

123.    Plaintiffs have established substantial goodwill and reputation in connection with their QUENCHER and ICEFLOW tumblers.

124.    Five Below has engaged in conduct that is likely to mislead the public into believing that its Hyperquench, Hydraquench, HydraSip, and Hydrachug tumblers are associated with Plaintiffs.

125.    Five Below's conduct includes copying the distinctive design elements and trade dress of Plaintiffs' products and using a name that is confusingly similar to Plaintiffs' QUENCHER mark.

126.   Five Below's conduct has been willful and calculated to exploit Plaintiffs' reputation and goodwill.

127.   Five Below's conduct has harmed Plaintiffs' business in the State of California by falsely suggesting to consumers that it is the source of, had sponsored or endorsed, or was otherwise affiliated with Five Below's inferior Hyperquench, Hydraquench, HydraSip, and Hydrachug products.

128.   Five Below's conduct constitutes unfair competition under the common law of California.

129.   Five Below's actions have caused and will continue to cause Plaintiffs to suffer damages, including lost sales, and damage to their reputation and goodwill.

**Count VII**

**Unfair Business Practices in Violation of California Business & Professions Code § 17200**

130.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 129 as if fully set forth herein.

131.   Five Below has engaged in unlawful, unfair, and fraudulent business practices in violation of California Business & Professions Code § 17200.

132.   Five Below's business practices are unlawful because they constitute patent infringement, trademark infringement, and false designation of origin in violation of federal law.

133.   Five Below's business practices are unfair because they threaten an incipient violation of the unfair competition laws, violate the policy and spirit of these laws, and significantly threaten or harm competition.

134.   Five Below's business practices are fraudulent because they are likely to deceive consumers into believing that Five Below's Hyperquench, Hydraquench, HydraSip, and Hydrachug tumblers are associated with, sponsored by, or approved by Plaintiffs.

135.   Five Below's unlawful, unfair, and fraudulent business practices have occurred in the conduct of its business selling tumblers in California.

COMPLAINT

136.    As a direct and proximate result of Five Below's unlawful, unfair, and fraudulent business practices, Plaintiffs have suffered and will continue to suffer injury in fact and lost money or property.

## Count VIII

### Unjust Enrichment Under California Common Law

137.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 136 as if fully set forth herein.

138.    Five Below has received a benefit by selling Hyperquench, Hydraquench, Hyperquench, HydraSip, and Hydrachug tumblers that copy Plaintiffs' patented designs and/or distinctive trade dress.

139.    This benefit has come at Plaintiffs' expense, as Five Below has capitalized on Plaintiffs' intellectual property and goodwill without authorization or compensation to Plaintiffs.

140.    Five Below has sold its infringing products to consumers who might otherwise have purchased Plaintiffs' products.

141.    Five Below has benefited from Plaintiffs' substantial investment in developing, marketing, and promoting its QUENCHER and ICEFLOW tumblers and their distinctive designs and trade dress.

142.    Five Below's retention of the profits from the sale of its infringing products would be unjust, as it has not paid for the right to use Plaintiffs' intellectual property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Five Below as follows:

A.    Enter judgment in favor of Plaintiffs and against Five Below for all compensatory, incidental, special, consequential, statutory, and punitive damages that may be recoverable, in an amount to be proven with specificity at trial, including without limitation all of Plaintiffs' profits from sales of infringing products together with prejudgment and post-judgment interest;

B.    Enter a declaratory judgment as set forth herein;

COMPLAINT

C. Enter a judgment that Five Below has (i) infringed Plaintiffs registered patents in violation of 35 U.S.C. § 271; (ii) infringed Plaintiffs' trade dress and registered trademarks in violation of 15 U.S.C. § 1114; (iii) engaged in false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); (iv) engaged in unfair competition under California common law; engaged in unfair business practices in violation of California Business & Professions Code § 17200; and (v) has been unjustly enriched at Plaintiffs' expense;

D. Enter a permanent injunction enjoining Five Below, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from further acts of patent infringement, trademark infringement, false designation of origin, unfair competition, and unfair business practices;

E. Enter an order requiring Five Below to deliver up for destruction all products, packaging, labels, literature, advertising, and other materials bearing or using Plaintiffs' patented designs, trademarks, or trade dress;

F. An award of costs and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and 15 U.S.C. § 1117; and

G. Such other relief as the Court deems just and proper.


Dated:  November 6, 2025                                        **PERKINS COIE LLP**


                                                By:   */s/ Sarah E. Piepmeier*
                                                    Sarah E. Piepmeier, Bar No. 227094
                                                    Nathan B. Sabri, Bar No. 252216
                                                    William C. Rava (*Pro Hac Vice* to be filed)
                                                    Caleb Bacos (*Pro Hac Vice* to be filed)
                                                    Samantha Carl (*Pro Hac Vice* to be filed)

COMPLAINT